IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA :
:
:
vs. : No. 10-145-02
:
:
SHAWN EDWARDS :

**ORDER**

AND NOW, this 7th day of March, 2011, upon consideration of defendant's motion for determination of separate conspiracies (paper no. 96) and the government's response thereto (paper no. 97), it appearing that:

A. Defendant Edwards was charged with four co-defendants in a twelve-count indictment alleging aggravated identity theft, conspiracy and bank fraud as to three financial institutions: Wachovia Bank, Commerce Bank and First Penn Bank. Defendant now moves the court to find his involvement in the conspiracy to defraud Commerce Bank was separate from ongoing conspiracies to defraud Wachovia Bank and First Penn Bank between December 2004 and June 2006;

B. Multiple conspiracies are defined as "separate networks operating independently of each other." United States v. Barr, 963 F.2d 641, 648 (3d Cir. 1992). However, "a single conspiracy can involve one pivotal figure who directs illegal activities while various combinations of other defendants further those activities in different ways and at different times. A single conspiracy finding does not require every member to participate in every transaction." United States

v. Padilla, 982 F.2d 110, 115 (3d Cir. 1992) (citation omitted);

C. In United States v. Kelly, 892 F.2d 255 (3d Cir. 1989), the Court of Appeals adopted a three-factor test to determine whether a group of individuals engaged in a single conspiracy or multiple conspiracies. A court should consider: (1) "whether there was a common goal among the conspirators;" (2) "whether, looking at the nature of the scheme, the agreement contemplated bringing to pass a continuous result that w[ould] not continue without the continuous cooperation of the conspirators;" and (3) "the extent to which the participants overlap in the various dealings." Id. at 259. The absence of one of these factors "does not necessarily defeat an inference of the existence of a single conspiracy." Padilla, 982 F.2d at 115;

D. In United States v. Greenidge, 495 F.3d 85 (3d Cir. 2007), the "three-tiered" conspiracy involved obtaining and altering stolen checks that were then deposited by the petitioners, who were brought into the scheme by "recruiters." Id. at 89-90. The Greenidge court first found there was a common goal among the conspirators; namely, "mak[ing] money by depositing stolen and altered corporate checks into business accounts." Id. at 93. Second, the court noted the conspiracy's objective would not continue without the continuous cooperation of petitioners because "[w]ithout a constant supply of willing depositors, the operation would necessarily have ceased." Id. at 94. Third, the extent of participant overlap pointed to a single conspiracy, because the checks the petitioners deposited "came from the same source . . . and they were altered by the same person . . . for the same reason

(to pass the scrutiny of the banks.)" Participant overlap was also found because the scheme employed "the same network of recruiters . . . to find depositors." Id. The Court of Appeals held there was a single conspiracy;

E.  Under Greenidge's application of Kelly, defendant was involved in a single, overarching conspiracy to defraud the banks named in the indictment. First, the conspiracy's participants shared a common goal: making money by cashing stolen and altered checks at three banks. Second, without Edwards' recruitment of willing depositors, the conspiracy would not have been as profitable. His activities were "necessary or advantageous to the success of an[] aspect of the scheme or to the overall success of the venture." Kelly, 892 F.2d at 259. Finally, there is substantial overlap among the conspiracy's participants. William Ford was the conspiracy's mastermind in defrauding all three banks. Andre Taylor, along with either Timothy Victor-Canty, Christopher Victor-Canty or both brothers, participated in the scheme against all three banks. Edwards recruited depositors and drove them to Commerce Bank, where they cashed fraudulent checks. Unindicted co-conspirator Gladisha Echevarria, working as a teller at Wachovia Bank and Commerce Bank, provided purloined checks to facilitate the conspiracy's objectives.

Accordingly, it is hereby **ORDERED** that:

1.  Defendant's motion for determination of a single conspiracy is hereby **DENIED**.

/s/ Norma L. Shapiro
_____
J.